# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| DAVID RIDDLEHOOVER, ERIC DYE, and TIMOTHY SELF,<br><br>*Plaintiffs*,<br><br>v.<br><br>PREMIER TOWING, LLC and BENJAMIN BUSBEE,<br><br>*Defendants.* | CIVIL ACTION NO.<br>5:21-cv-00152-TES |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES

Having resolved this matter a little more than nine months after its inception, the parties now present vigorous argument over the issue of attorney's fees. Pursuant to the Court-approved Settlement Agreement, Defendants must pay "[t]he Kaspers Firm, LLC . . . an amount to be determined by the Court for fees and costs incurred in this matter." [Doc. 15-2, p. 1]. To be expected, the parties present drastically different proposals for the Court's approval: Plaintiffs' counsel requests a total of $49,511.65 in fees and costs while Defendants think his efforts are worth about 6% of that amount, $3,420.60. And, unsurprisingly, the parties offer vastly different accounts as to why they're right. Plaintiffs claim that Defendants bear sole responsibility for such a high bill because they didn't maintain adequate records and provided inadequate documents

during discovery. Defendants argue that Plaintiffs' initial demand for fees constituted outrageous posturing that made settlement negotiations impossible. Like most bench-clearing brawls, both sides contributed to the mêlée and the umpires are left to sort out the resulting mess.

## BACKGROUND

For starters, the Court views the underlying premise of Plaintiffs' case as relatively simple: Plaintiffs brought the action "to recover unpaid regular and overtime compensation owed . . . pursuant to the [Fair Labor Standards Act]." [Doc. 1, ¶ 3]. All three Plaintiffs worked for Defendants as tow-truck drivers. [*Id.* at ¶ 18]; [Doc 5-1]; [8-1]. Defendants employed Plaintiff Riddlehoover from November 15, 2020, until March 1, 2021, Plaintiff Self from November 30, 2020, until March 26, 2021, and Plaintiff Dye from November 7, 2020, until May 2, 2021. [Doc. 1, ¶ 18]; [Doc. 5-1]; [Doc. 8-1]. Each Plaintiff alleged that they worked in excess of 40 hours per week but were not compensated for their overtime work. [Doc. 1, ¶ 19]; [Doc. 5-1]; [Doc. 8-1]. In fact, each Plaintiff claimed they worked *well* over 40 hours per week.[1] Each Plaintiff sought damages to include their alleged unpaid overtime compensation and liquidated damages to compensate for

---

[1] Plaintiff Riddlehoover claimed he typically worked between 5:30 a.m. and 10:00 p.m. Monday through Friday, or an average of 82.5 hours per week. [Doc. 20-1, p. 6]. Plaintiff Self claimed that he usually worked between 6:00 a.m. and 10:30 p.m. Monday through Saturday for an average of 99 hours per week. [Doc. 20-3, pp. 5–6]. Last, Plaintiff Dye claimed he worked between 6:00 a.m. and 9:30 p.m. Monday through Friday and between 6:00 a.m. and 4:00 p.m. on Saturdays for a total of 87.5 hours per week. [Doc. 20-2, pp. 6–7].

the late payment.² In sum, Plaintiffs demanded a total of $212,100.00 in total damages from Defendants. [Doc. 20, p. 4].

After almost 10 months of litigation, the parties finally came to an agreement and filed a Joint Motion for Approval of Settlement Agreement. [Doc. 15]. The Court approved the Settlement Agreement four days later on March 1, 2022. [Doc. 16]. Despite their initial ask of $212,100.00, Plaintiffs settled this case for just $11,082.64— approximately 94.8% less than initially sought. [Doc. 15-2, p. 1]. The Defendants also agreed to pay Plaintiffs' counsel ("Mr. Kaspers") "an amount to be determined by the Court for fees and costs incurred in this matter." [*Id.*]. Pursuant to this provision of the Settlement Agreement, Plaintiffs ask the Court to order Defendants to pay $48,045.00 in legal fees and $1,466.65 in costs.³ [Doc. 18-1, pp. 5, 8]; [Doc. 25-14, p. 1]. Defendants argue that this represents an "outrageous demand [that] should be substantially reduced." [Doc. 20, p. 1]. They propose that the Court award only $2,309.58 in legal fees and $1,111.02 in costs—reflecting a requested $355.63 offset. [Doc. 20, pp. 6–7]; [Doc. 24, pp. 3–4].

---

² Plaintiff Riddlehoover requested $47,812.50 in damages. [Doc. 20-1, p. 6]. Plaintiff Self requested $75,225.00 in damages. [Doc. 20-3, p. 6]. Last, but certainly not least, Plaintiff Dye requested $89,062.50 in damages. [Doc. 20-2, p. 7].

³ This total request for attorney's fees includes the amount initially requested by Plaintiffs in their Motion for Attorney's Fees ($44,415.00) and the amount requested in their Reply ($3,630.00) which reflects the additional time expended to respond to Defendant's Response. *See* [Doc. 18-1, pp. 5, 8]; [Doc. 25-14, p. 1]. Plaintiffs' counsel includes the total amount of costs on the provided timesheets, [Doc. 18-1, pp. 5–6], as well as in his Bill of Costs [Doc. 19].

3

## DISCUSSION

Conceptually, Plaintiffs' case remains very straightforward: they claimed they worked more than 40 hours per week, and they weren't compensated for their time. Similarly, proving their claims should also have been straightforward: discovery requests should have revealed timesheets for each employee and should establish how many hours, if any, they worked in excess of 40 hours. Following production of those documents, settlement negotiations should have hastened a resolution. However, as reflected in the parties' briefing, things weren't so straightforward. Accordingly, the Court must now determine what amount represents a reasonable fee to award Mr. Kaspers.[4]

A.   **Legal Standard**

The FLSA provides that "[t]he court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Because the FLSA contains statutory fee-shifting provisions, the Court will use the lodestar method to determine a reasonable fee. *In re Home Depot, Inc.*, 931 F.3d 1065, 1081 (11th Cir. 2019) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) ("In statutory fee-shifting cases, the Supreme Court has said that courts should use the lodestar method."). "Under the lodestar method, courts determine attorney's fees based

---

[4] Because Mr. Kaspers didn't request an evidentiary hearing on the issue of attorney's fees, the Court doesn't need to hold one before it resolves the issue. *Caplan v. All Am. Auto Collision, Inc.*, No. 19- 14099, 2022 WL 1939553, at *8 (11th Cir. June 6, 2022).

on the product of the reasonable hours spent on the case and a reasonable hourly rate." *In re Home Depot, Inc.*, 931 F.3d at 1076 (citing *Hensley v Eckerhart*, 461 U.S. 424, 433 (1983)). Courts may then adjust the "lodestar" amount based on the results obtained. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S., 886, 895—96 n.11 (1984)). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299 (citing *NCAAP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987)). Courts may, but aren't required to, use the eleven *Johnson* factors to assist in determining the reasonableness of the requested rate. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[5]

After ascertaining a reasonable billing rate, courts must determine the appropriate number of hours and should exclude "excessive, redundant or otherwise unnecessary hours." *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434). Fee applicants must exercise billing judgment and only include hours that an attorney could

---

[5] Because the Eleventh Circuit was previously a part of the Fifth Circuit, cases decided by the Fifth Circuit prior to October 1, 1981, are precedential to this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

reasonably bill to a client. *Id.* (citing *Hensley*, 461 U.S. 434, 437). "Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight." *Id.* (citing *Hensley*, 461 U.S. at 439 n. 15).

Finally, once the Court has determined the lodestar amount by multiplying the reasonable hourly rate by the number of hours reasonably expended, it must also consider whether the results necessitate any adjustments. *Id.* at 1302. "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.* (citing *Hensley*, 461 U.S. at 436–37). Courts may adjust for "block billing," a practice that involves listing "all the day's tasks on a case in a single entry, without separately identifying the time spent on each task" because it results in imprecision that penalizes the party opposing the fee application. *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012) (first citing *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp.2d 1368, 1377–78 (M.D. Fla. 2010) then citing *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117 at *13 (S.D. Fla. July 1, 2008)). Many courts within the Eleventh Circuit apply adjustments to a fee applicant's requested hours whenever they bill predominantly in quarter-hour increments. *See ABC Charters, Inc. v. Bronson*, 2010 WL 1332715, at *3 (S.D. Fla. Mar. 16, 2010) (identifying several courts that have reduced fee awards due to quarter-hour billing practices).

    B.    **Reasonable Hourly Rate**

Mr. Kaspers asks the court to approve a billing rate of $300 per hour. [Doc. 18, p.

6

4]. To support his request, Mr. Kaspers offered an analysis using all eleven *Johnson* factors and asserted "[e]ach and every *Johnson* factor weighs in favor of an award at the billable hourly rate Plaintiffs have suggested." [*Id.* at p. 9]. He also asserts that he has over 14 year of experience representing clients in FLSA matters and other employment litigation. [*Id.* at p. 4]. Furthermore, Mr. Kaspers points out that this Court has recently recognized his hourly rate of $300 per hour in FLSA cases as reasonable on numerous occasions. [*Id.*]. Last, Mr. Kaspers states that courts in the Southern District of Georgia and the Northern District of Georgia have also determined the reasonableness of his fee. [*Id.* at pp. 4–5].

Defendants don't contest Mr. Kaspers' requested hourly rate, and instead focus solely on the reasonableness of the number of hours expended representing Plaintiffs. Based on its experience, the Court agrees with the parties and finds that Mr. Kaspers' requested rate of $300 per hour represents a reasonable rate for this type of case and for a lawyer with his experience. *See Caplan*, 2022 WL 1939553, at *4 (quoting *Norman*, 836 F.2d at 1302, 1303) ("Courts are considered experts on the reasonableness of the number of hours expended and the hourly rates requested" and may consider its own knowledge and experience when determining reasonableness of attorney's fees).

    C.    **Reasonable Hours Expended**

The Court must ensure that it excludes any "excessive, redundant, or otherwise unnecessary hours" when determining the lodestar amount. *Norman*, 836 F.2d at 1301

(quoting *Hensley*, 461 U.S. at 434). "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Glover v. I.C. Sys., Inc.*, No. 5:19-cv-00103-TES, 2020 WL 3105091, at *3 (M.D. Ga. June 11, 2020) (citing *Gordon v. S. Bureau Corp.*, No. 5:19-cv-00063-MTT, 2019 WL 3937630, at *2 (M.D. Ga. Aug. 20, 2019)). The Court determines that the number of hours claimed by Mr. Kaspers contains some excessive entries that the Court must correct.

Mr. Kaspers claims that he reasonably expended 160.15 hours prosecuting this action, which at first blush seems pretty high.[6] *See* [Doc. 18-1, pp. 5, 8]; [Doc. 25-14]. To put it another way, 160 hours equates to working on this case eight hours a day, five days a week for four weeks. Mr. Kaspers argues that a few factors contributed to the large number of hours expended: numerous discovery requests, including 21 interrogatories and 35 document production requests; inadequate discovery responses from Defendants; lack of adequate recordkeeping as required by FLSA; aggressive and ultimately meritless defenses argued by Defendants; and the novelty and difficulty of the case. [Doc. 18, pp. 9–13]. While the Court accepts some of these explanations, it doesn't believe that they reasonably resulted in more than 160 billed hours.

---

[6] The Court notes that this total does *not* include the number of hours not charged or voluntarily written off by Mr. Kaspers as indicated by his timesheets. *See* [Doc. 18-1, pp. 5, 8].

First, the Court disagrees that the case involved an unusually high number of discovery requests. The Federal Rules of Civil Procedure provides that parties may serve up to 25 written interrogatories as a matter of course and Plaintiffs only submitted 21. Fed. R. Civ. P. 33. Further, the Court doesn't agree that sending 35 production requests would significantly increase the number of hours expended in this case.[7] In fact, the parties didn't request additional interrogatories or production requests and agreed "to streamline the production" of electronically stored information. *See* [Doc. 7].

Next, the Court takes issue with Mr. Kaspers' characterization of this case as novel or difficult. Specifically, he bases this argument on the fact that he "was unable to locate a case involving tow truck drivers in Georgia who were not paid overtime and whose employer utilized the defenses set forth by Defendants." [*Id.* at p. 10]. Indeed, if attorneys always compared their particular case to others with that level of granular detail, then every case would be considered novel. Plaintiffs have offered nothing to

---

[7] If Plaintiffs' counsel spent an inordinate amount of time drafting case-specific, original interrogatories and RPDs, he was required to have explained exactly what he did and what made the discovery requests in this case so unique. However, in cases like this, the Court draws on its experience and notes that most, if not all, lawyers have several pre-drafted, standard interrogatories and other discovery requests that require little more effort than to simply cut and paste into a new document with the correct case style. Likewise, the Court routinely sees the same boilerplate introductory language in discovery requests that contains onerous definitions and other such information in the preamble and parties responding to discovery requests almost always contains several standard objections, most of which never apply. Defendants often include every defense listed in the Federal Rules of Civil Procedure in their answer. In the reality of legal practice, the Court notes that neither side really pays much attention to these numerous defenses because they know the vast majority do not and will not apply to the specific case. The Court certainly appreciates the efficiency that such standard documents bring to a case, but parties shouldn't expect to get paid for them every single time as if they were drafted anew. *See Caplan*, 2022 WL 1939553 at *5 (affirming the district court's reductions because of the use of boilerplate filings).

9

convince the Court that FLSA cases involving tow truck drivers are somehow special, as compared to pizza delivery drivers or other sort of drivers. The Court stands by its earlier assessment—this case presented a straightforward issue of Defendants not paying Plaintiffs for their overtime work. The fact that Defendants aggressively defended Plaintiffs' claims and argued defenses that may not have panned out doesn't readily distinguish the case from other FLSA cases.

However, the Court finds that there is something to Mr. Kaspers' arguments that Defendants ultimately share some responsibility for running up the tab. Mr. Kaspers argues that Defendants "minimally answered the written discovery (without verification), and produced a number of irrelevant, inaccurate, and unreliable documents." [Doc. 18, p. 12]. He also points out that Defendants intentionally withheld the method of calculating hours from at least one of the Plaintiffs and didn't maintain statutorily required records that reflected a reliable number of hours worked by each Plaintiff. [*Id.* at pp. 12–13]. In fact, Mr. Kaspers had to subpoena a third party—Copart, Defendants' sole customer—in order to obtain any documents that reflected Plaintiffs' hours. [*Id.* at p. 13].

Interestingly, Defendants say that this argument "is a red herring" and only argued that the "issues" in this case only represent "routine discovery conferral." [Doc. 20, p. 16]. The Defendants don't address head-on why they failed to initially provide documents, why Copart had to ultimately provide the documents, whether they

10

initially sent unverified responses (despite sending them later), and most importantly why Plaintiffs' counsel shouldn't be paid for having to expend the extra effort to get these undoubtedly relevant documents. The Court agrees that Defendants' attitude towards recordkeeping greatly and unnecessarily extended the shelf-life of this case. Had Defendants maintained proper records and disclosed them after the first request, the parties likely would have spent much less time resolving those matters.

Before the Court conducts its hour-by-hour analysis, it addresses Defendants' numerous arguments that Plaintiff's billings should be reduced.[8] First, Defendants argue that Mr. Kaspers cannot recover for "administrative and/or clerical work, billed at an attorney rate." [Doc. 20, p. 11]. Indeed, Eleventh Circuit precedent provides that attorneys can recover for administrative or paralegal work "*only to the extent that the paralegal performs work traditionally done by an attorney.*" *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982)). Courts have found that activities "such as gathering materials, copying them, mailing them and refiling them" constitute clerical and secretarial work. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp.2d 1328, 1334 (M.D. Fla. 2002). Defendants identified numerous entries on Mr. Kaspers' timesheet that seem to indicate time billed for sending documents. [Doc. 20, pp. 12–13]. However, the Court finds Mr. Kaspers'

---

[8] For the sake of its analysis, the Court does not address Defendants' arguments in the order they appear in their Response, but rather starts with the arguments that lack merit and ends with their arguments raising valid concerns.

11

explanation that the time to email these documents took less than a minute each time and the time billed for those tasks relates to the substantive task listed in each entry persuasive. As such, the Court did not reduce his hours based on this argument.

Second, Defendants argue that Mr. Kaspers is not entitled to fees for his representation of Plaintiff Self after December 21, 2021 because he ultimately settled for less than their offer on that date. [*Id.* at p. 13]. Again, Defendants cite case law allowing the Court to consider rejected settlement offers. [*Id.* at pp. 13–14 (quoting *Walker v. Iron Sushi LLC*, 752 F. App'x 910, 915 (11th Cir. 2018) ("The reasonableness of an award can of course depend on many factors, and we see no reason why a rejected settlement offer, and its relationship to the final result obtained, should not be a permissible consideration for the district court to take into account."))]. And, despite the supporting case law, the Court again finds that its application to this case inapposite.

Without doubt, Defendants offered Plaintiff Self a settlement amounting to $4,600.00—$2,600 more than his ultimate settlement amount. *See* [Doc. 25-11, p. 1]; *see also* [Doc. 15-2, p. 1 (reflecting a settlement amount of $2,000.00 for Plaintiff Self)]. Under normal circumstances, the Court would take such a rejection into account and likely reduce Mr. Kaspers' hours in kind. However, the fact that Defendants didn't maintain proper records presents an abnormal situation. The fact that Mr. Kaspers had to receive documents confirming Plaintiffs' hours from Copart—Defendants' *customer*—isn't normal. In fact, it appears that January 14, 2022 represents the first time Mr. Kaspers

received any documents from Copart. [Doc. 25-2]. Further, Mr. Kaspers received another round of documents from Copart on February 8, 2022, including "a report narrowed down to trips made by [the Plaintiffs]." [Doc. 25-4]. As such, the earliest Mr. Kaspers could have reasonably agreed to an offer of judgment would have been on January 14, 2022—24 days after the offer of judgment identified by Defendants as problematic. The Court simply won't penalize Mr. Kaspers by reducing his hours because of Defendants' inability to maintain proper employment records.[9]

Third, Defendants argue that Mr. Kaspers' lodestar amount should be reduced by 94.8% because the final settlement figure represents 94.8% of the Plaintiffs' initial request for damages.[10] [Doc. 20, p. 4]. They then cite to a plethora of case law for the proposition that courts may appropriately reduce the lodestar amount when plaintiffs only achieve partial or limited success or when unrealistic or legally unsupported damage calculations prolong the litigation. [*Id.* at pp. 5–6]. Even though they don't

---

[9] Defendants make this same argument with respect to Plaintiffs' Bill of Costs and asks the Court to award them $355.63 to offset the costs related to Plaintiff Self's deposition. *See* [Doc. 24, p. 3]. Similarly, the Court doesn't grant this request because it would effectively penalize Mr. Kaspers for Defendants' failure to maintain statutorily-required employment records.

[10] The Court finds Defendants' argument that Plaintiffs' counsel should only be awarded less than $3,500 in total attorney's fees and costs to border on frivolous. The Defendants absolutely fail to explain how or why they think any lawyer could reasonably have handled Plaintiffs' case for under $3,500, including costs. Defendants apparently ignore the statute's mandate that prevailing parties receive a *reasonable* fee for their work and, in this case, $3,500 isn't close to reasonable given the roadblocks that Mr. Kaspers had to navigate. Surely, if Defendants sincerely believed that the Court would cut Mr. Kaspers' fees by such a severe amount, they could have (and should have) come forward with a much more concrete way for the Court to do it rather than blindly arguing for an across-the-board cut without sufficient facts to support such drastic action.

outright say it, Defendants clearly believe Mr. Kaspers requested unrealistic and legally unsupported damages, as evidenced by the ultimately fractional settlement, which unduly prolonged the litigation.

Under normal circumstances (and in other cases), the Court would find a percentage reduction imminently reasonable.[11] However, this argument doesn't address the fact that Defendants' failure to maintain proper records reflecting the number of hours worked by each Plaintiff would have certainly facilitated a different (likely lower) demand. The Court finds it reasonably likely that Plaintiffs would have adjusted their request for damages had they received adequate employment records early on during the discovery period. Accordingly, the Court determines that it shouldn't penalize Plaintiffs' counsel for Defendants' failure to maintain and timely produce better records.

Moreover, Defendants' argument that the low ratio of eventually recovered money *per se* requires an equal reduction in legal fees doesn't hold much water. Rarely does a case settle for the initial demands or initial counteroffers. And, such an automatic cut based on the ratio of amounts recovered to amounts demanded would remove the Court's duty to exercise its discretion, reducing its role to rote mathematics. Surely, scenarios exist where large percentage cuts would be appropriate due to the limited

---

[11] However, Defendants did not cite to a single case where a Court awarded a party the exact same amount of his requested fee based on the percentage of recovery as compared to his initial demand AND did so based solely on that factor.

14

success of the prevailing party, but that just isn't the case here. And, the Court finds that the (later-adjusted) lodestar amount doesn't appear excessive as to warrant any reduction due to the relatively small settlement amount as compared to the initial demand.

Last, Defendants argue that Mr. Kaspers engaged in unreasonable billing practices, such as block billing, billing by quarter-hour increments, and excessive and unreasonable entries, that require a reduction of the lodestar. [Doc. 20, p. 7]. The Court partially agrees.

The Eleventh Circuit has described "block billing" as putting "all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Env't Servs., Inc.*, 476 F. App'x at 203 (citing *Kearney*, 713 F. Supp.2d at 1377–78. Mr. Kaspers didn't do that. Sure, Defendants correctly point out that he included numerous entries on his timesheets that show multiple tasks being performed in a specific block, but they only identify a 4.25-hour block as the longest problematic entry and that certainly doesn't amount to an entire day. Indeed, all of the tasks in that block—and the other blocks complained about by Defendants—seem related to the same overarching task. The Court finds that, all else equal, these entries don't constitute unreasonable billing practices.

However, Defendants' critique that Mr. Kaspers predominantly billed in quarter-hour increments presents a valid concern. Plaintiffs' counsel even admits that "a

majority of [his] time may have ended on the quarter-hour." [Doc. 25, p. 4]. To defend this practice, Mr. Kaspers argues that despite most entries ending on the quarter-hour, he billed by the tenth-of-an-hour, and as such "no deduction is warranted for allegedly failing to do so." [*Id.* at pp. 4–5]. Just because Mr. Kaspers billed *some* entries at the appropriate rate, doesn't mean that he didn't engage in unreasonable quarterly-hour billing and his assertions to the contrary appear implausible. *See generally* [Doc. 18-1 (reflecting most entries billed at the quarter-hour mark)]. Because billing at a quarter-hour rate can result in a significant windfall to attorneys, the Court appropriately addresses this billing practice when making its hour-by-hour analysis of Mr. Kaspers' timesheets below. *See Ramsey v. State of Ala. Pub. Serv. Comm'n*, No. CIV.A. 96-T-275-N, 2000 WL 426187, at *5 (M.D. Ala. Apr. 13, 2000) (asserting that billing in quarter-hour increments "could result in a substantial windfall to the attorneys" because it likely involved rounding up time entries).

Defendants' argument that Mr. Kaspers excessively and unreasonably billed hours also has merit. Defendants assert that the number of excessive and unreasonable time entries "are legion" and then identifies distinct, stand-out entries. [Doc. 20, pp. 7–8]. Mr. Kaspers' accumulation of 19 hours to file his motion for attorney's fees proves particularly problematic to the Defendants. [*Id.* at p. 8]. Mr. Kaspers argues that every excessive example identified by Defendants "were necessary to this case." [Doc. 25, p. 3]. Mr. Kaspers then argues that he had to "finish [Plaintiffs'] Complaint and

16

accompanying documents (and every other document filed in this case) before filing them; research and/or shepardize the current status of various FLSA matters directly involved in this case; and review documents and prepare for Defendants' deposition (shortly after which this case settled)." [*Id.* at pp. 3–4]. Last, he finishes his response to Defendants' argument by asserting he "prides himself on an efficient manner of litigation, and Defendants' conclusory allegations to the contrary do not warrant reducing [his] lodestar calculation." [*Id.* at p. 4].

The Court agrees with Mr. Kaspers that Defendants' conclusory allegations don't' hold much weight and shouldn't be the basis for reducing his lodestar amount. However, *his* general assertions that all his actions "were necessary" and that he "prides himself on an efficient manner of litigation" similarly don't provide solid ground on which his time entries may stand. *See Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 439 n. 15) ("Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight."). In fact, after its own extensive review of Mr. Kaspers' timesheets, the Court has identified numerous examples of problematic billing. In fulfilling its obligation to exercise billing judgment, the Court reviewed every single entry and exercised its considerable discretion in reducing several of his timesheet entries to reflect what the

Court considered to be a more reasonable amount. *See* Court's Exhibit A.[12] Specifically, because of the relative lack of complexity of the case, the boilerplate or common language for several discovery requests, and Mr. Kaspers' considerable experience with FLSA actions, the Court finds that Mr. Kaspers' requested number of hours (160.15) must be reduced. *See Caplan*, 2022 WL 19939553, at *5–6 (affirming the district court's reduction using the same criteria).

In total, the Court exercises its considerable discretion and reduces the number of hours reasonably expended on this case from 160.15 hours to 122.75 hours—a total reduction of 37.4 hours. To determine Mr. Kaspers' new lodestar amount, the Court takes this new number of hours and multiplies it by $300—his reasonable hourly billing rate—and arrives at a total of $36,825.00. Accordingly, the Court **DENIES in part** and **GRANTS in part** Plaintiffs' Motion for Attorney's Fees. The Court **ORDERS** Defendants to pay Plaintiffs' counsel a total of $36,825.00 in attorney's fees, plus costs as discussed below.

D.    **Costs**

The Settlement Agreement signed by the parties, and approved by the Court, provides that "'[t]he Kaspers Firm, LLC shall receive an amount to be determined by the Court for fees *and costs* incurred in this matter." [Doc. 15-2, p. 1 (emphasis added)].

---

[12] Court's Exhibit A shows a red-lined version of the timesheets filed by Plaintiffs' counsel and provides the Court's individual analysis of each time entry. *See* [Doc. 18-1]; *see also* [Doc. 25-14].

Mr. Kaspers submitted a Bill of Costs, with supporting documentation, totaling $1,466.65. [Doc. 19, p. 1]. His timesheets also reflect this amount. *See* [Doc. 18-1, pp. 5–6]. Defendants respond to Plaintiffs' Bill of Costs by saying the "proposed costs are not *per se* objectionable, any costs Plaintiffs recover must be offset by costs Plaintiffs owe to Defendants." [Doc. 24, p. 2].

As discussed above, Defendants argue they are entitled to an offset of $355.63 because Plaintiff Self rejected a prior, more favorable settlement offer and any time Plaintiffs' counsel spent after that offer remains unrecoverable. *See*, n.9, *supra*. Again, because Defendants' failure to maintain adequate employment records rendered any meaningful settlement negotiations much more difficult, the Court won't penalize Plaintiffs' rejection of that offer of judgment. Consequently, the Court finds that Plaintiffs' request of $1,466.65 for costs incurred in this matter reasonable. As such, the Court **ORDERS** Defendants to pay Plaintiffs' counsel $1,466.65 for costs pursuant to their Settlement Agreement.

## CONCLUSION

After a thorough review of the parties' filings, the attached timesheets, and the relevant binding legal precedent, the Court **DENIES in part** and **GRANTS in part** Plaintiffs' Motion for Attorney's Fees [Doc. 18] and finds Plaintiffs' counsel is entitled to a total of $36,825.00 in fees. Further, the Court determines that pursuant to the

Settlement Agreement [Doc. 15-2], Plaintiffs' counsel is entitled to $1,466.65 in costs.

Accordingly, the Court **ORDERS** Defendants to pay Mr. Kaspers a total of $38,291.65.

    **SO ORDERED**, this 7th day of June, 2022.

s/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
